UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KENNICE RENEE OFFUTT,
    Plaintiff,

vs.                                                                                   04-1231,

LYNN CAHILL-MASCHING, et. al.,
    Defendants.

ORDER

This cause is before the court for consideration of the defendants' motions for summary judgement. [d/e 98, 100]

I. BACKGROUND

The plaintiff originally filed her complaint pursuant to 42 U.S.C. §1983 against 11 defendants at the Dwight Correctional Center including Defendants Former Chief Administrator Lynn Cahill-Masching, Assistant Warden Ted Conklin, Chief Administrator Alyssa Williams, Health Care Administrator Dorretta O'Brion, Dr. Louis Shicker, Dr. Toussaint, Officer Christina Johnson, Officer Heather Jordan, Officer Nena Amezcua-Eitemiller, Dr. Bonnie Nowakowsi and Dr. Nielson:.  On September 21, 2004, the court conducted a merit review hearing.  The court struck the plaintiff's complaint as a violation of Rule 8 of the Federal Rules of Civil Procedure. September 21, 2004 Court Order.   However, after discussing the plaintiff's intended claims with her during the hearing, the court entered an order outlining the plaintiff's various claims against the defendants. *Id*.

On October 11, 2005, the court granted the defendants' motion for partial summary judgement. October 11, 2005 Court Order.   The plaintiff now has the following surviving claims:

The defendants were deliberately indifferent to the plaintiff's serious medical condition in violation of the Eighth Amendment when they:
1) refused to allow a recommended hysterectomy;
2) failed to treat the plaintiff' diverticulitis; and,
3) did not allow prescribed medication for leg spasms.[1]

The defendants have filed a motion for summary judgement on the remaining claims.

---

[1]The court notes that the defendants also make reference to the plaintiff's earlier claim that they defendants failed to allow antibiotics for an infected fallopian tube.  This claim was dismissed on October 11, 2005 for failure to exhaust administrative remedies. *See* October 11, 2005 Court Order.  The court also notes the defendants have provided evidence in the motion for summary judgement that the plaintiff did not suffer from an infected fallopian tube and therefore was not in need of antibiotics. (Def. Memo, Shicker Aff, p. 3).

## II. FACTS

The plaintiff did not provide a response to the defendants statement of undisputed facts. Therefore, the following facts are taken from the defendants statement of undisputed facts and the plaintiff's response to the dispositive motions.

The plaintiff was incarcerated at the Dwight Correctional Center during the relevant time periods of her complaint. Dr. Louis Shicker has been the Medical Director at this institution since March of 2003.

Dr. Shicker says when he became medical director, he saw the plaintiff regarding her complaints of "lower abdominal pain and claims of non-remitting vaginal bleeding." (Def. Mot, Shicker Aff, p. 1) The doctor says the plaintiff was examined and her blood count was checked on more than one occasion. Each time, the results of the blood count were always in the normal range.

The plaintiff was also seen by an on-site gynecologist, Dr. Toussaint and was referred to an off-site gynecologist and the University of Illinois Medical Center in Chicago. (Herein UIC) Dr. Shicker says the plaintiff "was provided varying types of oral and parenteral (injection form) contraceptives in an attempt to regular her menses." (Def. Mot, Shicker Aff, p. 2). However, the plaintiff said none of the contraceptives alleviated her problems.

The plaintiff was then transferred to the infirmary for observation to document the extent of her problem. The medical staff determined that the plaintiff did not suffer from excessive bleeding and noted only "minor streaks of blood." *Id.* The plaintiff was then referred for an ultrasound which was performed on-site. The ultrasound revealed a normal uterus size and the absence of a right ovary and fallopian tube. A biopsy was also ordered which confirmed a normal menstrual cycle.

Dr. Shicker says that "[b]ased upon these findings, the on-site gynecologist felt that a hysterectomy was not medically necessary, but would be purely an elective procedure." (Def. Memo, Shicker Aff, p. 2). Dr. Shicker says he agreed with this assessment. However, due to the plaintiff's persistent complaints, she was sent to the UIC Medical Center for a second opinion. At UIC, the plaintiff underwent a transvaginal ultrasound. The procedure showed a normal-sized uterus and ovarian cyst. The UIC physicians recommended a patch or vaginal ring to control menstruation. If this was not successful, they recommended that the plaintiff should then be offered either an endometrial ablation, a procedure that heats the uterine lining to decrease menstrual flow, or a hysterectomy. The recommendations were to be reconsidered after the patient underwent a psychiatric clearance.

The plaintiff had a follow-up visit at UIC approximately two months later and was assessed with a left ovarian cyst and a fluid-filled tube. Dr. Shicker says he recommended pre-operative clearance to be followed by diagnostic laparoscopy. The plaintiff was then referred by the defendant to UIC for gastroenterology and urology work-ups.

Dr. Shicker says in July of 2004, the gynecology department at UIC decided to delay the

surgery until the plaintiff underwent a complete gastroenterology and urological work-up to rule out any other causes of the plaintiff's abdominal pain before preceding with the laparoscopy and possible hysterectomy.  The work-ups were completed and the plaintiff was scheduled in October of 2004 for the gynecologic procedures.

The plaintiff ultimately refused her medical furlough that was scheduled for December 15, 2004.   The plaintiff admits she refused this medical treatment as well as other offered treatment.(Def. Memo,  Ex. F)  She claims "she had no choice except to refuse defendant's offered treatment due to lies, cover up, deception, altered records, etc, etc in fear for her life." (d/e 105, Plain. Resp, p. 5)

As for the plaintiff's other claims, Dr. Shicker says although the plaintiff "may have been advised that diverticulitis was a possible cause of the chronic abdominal pain, her medical diagnostic work-ups never confirmed a diagnosis of diverticulitis.  Accordingly, she has never been treated for a condition from which she does not suffer." (Def. Memo, Shicker Aff, p. 3)

The plaintiff states that she was diagnosed with diverticulitis and alleges that the defendant has falsified her medical record.  The plaintiff points to one medical record dated March 26, 2002 as proof of her claim.   The record is not clearly decipherable, but it does include a note that says "diverticulousis."   This is not the same condition as diverticulitis.  In addition, there is no indication from the note whether this is a diagnosis or whether it is simply indicating that further testing is needed.  Nonetheless, the plaintiff underwent substantial testing after this date and there is no confirmed diagnosis of diverticulitis before this court.

Dr. Shicker says a review of the medical records indicates that the plaintiff did complain about pains and spasms in her right upper and lower extremities, but the doctor says he was not the medical director at the time.

> Based upon my review of the records, the Plaintiff was seen by neurology at UIC where an MRI of the brain, as well as an EMG, were performed.  The findings of those examination did not reveal any specific abnormality that would be attributable to those symptoms. (Def. Memo, Shicker Aff, p. 4)

Dr. Shicker says the plaintiff was prescribed medical for possible dystonia. "Dystonia is a neurological movement disorder characterized by involuntary muscle contractions which force certain parts of the body into abnormal, sometime painful movement or postures." *Id.*  The plaintiff alleges she was never given this medication.

The plaintiff was scheduled for a follow-up at UIC neurology in May of 2003, but the plaintiff refused to attend.  Dr. Shicker says he spoke with UIC neurology physicians on May 29, 2003, and they did not recommend any further work-up at that time.  "They also reported to me that Ms. Offutt suffered from no serious medical/neurological disease." (Def. Memo, Shicker Aff, p. 4). Shicker requested to see the plaintiff on June 3, 2003 to discuss her condition, but the plaintiff refused to see the doctor.  "Based upon the plaintiff's failure to cooperate in her own care, it was my medical judgement not to continue this medication without confirmation of an ongoing problem." (Def. Memo, Shicker Aff, p. 4)

> Based upon my review of the records and personal examinations of Ms. Offutt, we have yet to find anything medically significantly wrong with her. Ms. Offutt has received X-rays of her chest and abdomen, which were normal. She has also received an ultrasound of her abdomen. All findings of these diagnostic tests were unremarkable or normal. In my medical opinion, Ms. Offutt suffers from no serious medical needs. *Id.*

Dr. Shicker also states that the plaintiff has continued to refuse care.

> There is no medical emergency which would require that Plaintiff be forced to undergo procedures that had previously been offered to her as those procedures were offered in an effort to alleviate her complaints of pain and symptoms. Plaintiff is not at risk of substantial harm concerning any of her complaints. (Def. Memo, Shicker Aff, p. 5)

### III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV. ANALYSIS

The defendants argue that the plaintiff has failed to demonstrate that anyone was deliberately indifferent to her medical needs. The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*. The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.* On the other hand, "to say that the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v Detella,* 95 F. 3d 586, 592 (7th Cir. 1996).

The second prong of the Eighth Amendment test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford,* 2001 WL 456427 at 6. However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Defendant Shicker states that there is no evidence that the plaintiff ever suffered from a serious medical condition. However, even if the plaintiff did suffer from a serious medical need, the court agrees that there is no evidence that the defendants were deliberately indifferent to her condition. The record before the court shows the plaintiff was evaluated by both on-site doctors and outside medical personnel. Numerous tests were also performed. None demonstrated that the plaintiff had a serious medical condition.

The plaintiff alleges that the defendants have altered or forged her medical records. She claims she was in fact diagnosed with diverticulitis. However, the plaintiff has failed to provide evidence of this diagnosis. The mere reference to a different condition, diverticulosis, in an early medical report does not confirm the plaintiff's theory. Numerous tests including a colonoscopy were performed after the date of this medical record which demonstrated no irregularity.

To avoid summary judgement, the plaintiff must present admissible evidence which creates a question of fact concerning one of the essential elements of her case. Unsubstantial assertions of actual dispute or mere conclusions or opinions are insufficient. *See Thomas v. Price,* 975 F.2d 231, 235 (5th Cir. 1992) *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); s*ee also Morgan v. Church's Fried Chicken,* 892 F.2d 10, 12 (6th Cir. 1987). The plaintiff has not presented sufficient evidence to create a triable fact as to whether the defendant falsified her medical records.

The plaintiff also admits that she refused a scheduled hysterectomy and treatment for her leg spasms. Neither were deemed medically necessary by either on-site or outside medical personnel. "Plaintiff cannot refuse treatment and food then complain that defendants were deliberately indifferent to (her) medical and nutritional needs. Such an "exotic" theory of liability has been flatly rejected." *Grant v. O'Leary,* No. 95-50140, 1996 WL 377173 at 5 (N.D. Ill. June 19, 1996) *citing Thomas v. Gish,* 64 F.3d 323, 326 (7th Cir. 1995).

The plaintiff has failed to demonstrate that there is any genuine issue of material fact

concerning her allegations that the defendants violated her Eighth Amendment rights. Dr. Shicker's motion for summary judgement is granted.

## V. REMAINING DEFENDANTS

There is some confusion over the remaining claims and defendants in this case. On October 11, 2005, the court dismissed the plaintiff's claims that Defendants Johnson, Jordan and Amezcua- Miller retaliated against the plaintiff and that the defendants opened the plaintiff's legal mail. The plaintiff had failed to exhaust her administrative remedies for these claims. October 11, 2005 Court Order.

It is somewhat doubtful the plaintiff intended to persist in her medical claims against the non-medical defendants. However, since the plaintiff was proceeding pro se and simply alleged that the "defendants" were responsible for each of her allegations, none of the defendants were dismissed.

There is no indication that any of these defendants were involved in the plaintiff's medical claims. For instance, Defendant O'Brien argues that her job as the Health Care Coordinator did not include treatment decisions for individual inmates. O'Brien says she is not a physician, and therefore, "[t]reatment decisions were the exclusive purview of the physicians assigned to the Health Care Unit." (Def. Memo, O'Brien Aff., p. 1). A non-medical defendant's "reliance upon the opinion of medical staff as to the proper course of treatment for plaintiff is sufficient to insulate them from liability under the eighth amendment." *McEachern v. Civiletti,* 502 F.Supp. 532, 534 (D.C. Ill. 1980). The court will dismiss Defendants Johnson, Jordan and Amezcua- Miller .

In addition, the court notes that some of the named defendants were not served in this case including Chief Administrative Officers Lynn Cahill-Masching and Alyssa Williams; Assistant Warden Conkling; Officer Johnson; Dr. Toussaint; Dr. Nowakowski and Dr. Nielsen. It is not entirely clear from the record why these individuals were not served. Summons were issued, but not returned to the clerk of the court. There is no further indication in the record on the status of these defendants.

An attempt to serve these defendants at this point would be futile. First, many of these defendants are non-medical personnel. Therefore, Defendants Cahill-Masching, Williams, Conkling and Johnson would be insulated from liability under the Eighth Amendment due to their reliance on the opinion of medical staff for the proper treatment for the plaintiff.

Second and more importantly, the plaintiff has not demonstrated there is any merit to her claims. It was determined that "a hysterectomy was not medically necessary, but would be purely an elective procedure" after both an ultrasound and biopsy were performed. (Def. Memo, Shicker Aff, p. 2). The defendants still offered the surgery to the plaintiff, but she refused to go. The plaintiff was never diagnosed with diverticulitis. Finally, the plaintiff's medication for leg spasms was only stopped when she refused to come to follow up visits to discuss her condition. It was also determined that her spasms were not caused by any serious medical or neurological disease. (Def. Memo, Shicker Aff, p. 4).

The medical records show the plaintiff was seen by a variety of doctors both within the Department of Corrections and from outside medical centers, and the doctors "have yet to find anything medically significantly wrong with her." (Def. Memo, Shicker Aff, p. 4).

**IT IS THEREFORE ORDERED that:**

1. **The defendants' motions for summary judgment are granted [d/e 98, 100]. The clerk of the court is directed to enter judgment in favor of all the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. All pending motions are denied as moot [d/e 29], and this case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, she may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, she will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

3. **The agency having custody of the Plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $150.00 in her trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $150.00.**

4. **The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

Entered this 12th Day of December, 2007.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE